**J.C. EHRLICH CO., INC., Appellee**

**v.**

**Keith D. MARTIN, individually and doing business as Q & A Pest Control, Appellant.**

Superior Court of Pennsylvania.

Argued April 28, 2009.

Filed July 9, 2009.

James J. Rosini, Shamokin, for appellant.

William R. Swinehart, Sunbury, for appellee.

BEFORE: ORIE MELVIN,
GANTMAN and CLELAND, JJ.

OPINION BY ORIE MELVIN, J.:

¶ 1 Appellant, Keith D. Martin (Martin), individually and d/b/a Q & A Pest Control (Q & A), appeals from the order granting a permanent injunction in favor of Appellee, J.C. Ehrlich Co., Inc. (Ehrlich). We affirm.

¶ 2 The facts and procedural history may be summarized as follows. On April 8, 1988, Ehrlich and Martin entered into an employment agreement wherein Ehrlich employed Martin as a service technician for its pest control business. The written agreement, signed by both Martin and a representative of Ehrlich, included the following non-compete covenant.

8. *Covenant Not To Compete*: To induce the Company to enter into this Agreement, you represent and acknowledge that upon termination of your employment, for any reason whatsoever ... you will not directly or indirectly engage in the same or a similar line of business as carried on by the Company. This covenant not to compete with the Company shall last and bind you for a period of two (2) years ... and shall extend to, include, and be enforceable

within the territories or geographic areas making up each Company office where you have served Company customers . . . or acquired or been exposed to confidential information belonging to the Company.

Exhibit A to Complaint, Certified Record (C.R.) at 1. In August or September 2007, Martin began conducting Q & A as a pest control business within a territory in central Pennsylvania which was serviced by Ehrlich. Martin terminated his employment with Ehrlich on August 26, 2007.

¶ 3 In the meantime, in January 2006, Ehrlich entered into a stock purchase agreement with Rentokil, Inc. (Rentokil) which effectively consolidated the two companies. Martin continued to earn paychecks from Ehrlich after this merger, and Ehrlich continued to file W–2 tax reporting forms for him through the termination of his employment.

¶ 4 In December 2007, Ehrlich filed a complaint against Martin in which it sought injunctive relief. C.R. at 1. The trial court conducted a hearing on March 12, 2008, at which time counsel for both parties agreed to submit a stipulation of facts. *Id.* at 8, 9. By order of May 12, 2008, the trial court granted a permanent injunction in favor of Ehrlich, enjoining Martin from engaging in his pest control or other similar business within the geographic territory specified in the complaint and from divulging any confidential information relating to Ehrlich's business. This timely appeal followed, wherein Martin presents a single issue for our review: "Did the court err in failing to apply the rules of equity and the law as to non[-]compete agreements?" Appellant's brief at 1.[1]

¶ 5 When an appellate court reviews the grant of a permanent injunction, its scope of review is plenary. *Kuznik v. Westmoreland County Bd. of Comm'rs,* 588 Pa. 95, 117, 902 A.2d 476, 489 (2006).

Our standard of review in addressing whether a trial court erred in granting a permanent injunction is well-settled.

> In order to establish a claim for a permanent injunction, the party must establish his or her clear right to relief. However, unlike a claim for a preliminary injunction, the party need not establish either irreparable harm or immediate relief and a court may issue a final injunction if such relief is necessary to prevent a legal wrong for which there is no adequate redress at law. Additionally, when reviewing the grant or denial of a final or permanent injunction, an appellate court's review is limited to determining whether the trial court committed an error of law.

*Pestco, Inc. v. Associated Products, Inc.,* 880 A.2d 700, 710 (Pa.Super.2005) (citation omitted).

¶ 6 A covenant not to compete is a restrictive covenant "relied upon by employers to shield their protectible business interests." *Hess v. Gebhard & Co., Inc.,* 570 Pa. 148, 157, 808 A.2d 912, 917 (2002). "[T]he non-competition covenant precludes the former employee from competing with his prior employer for a specified period of time and within a precise geographic area." *Id.* at 157, 808 A.2d at 917. "In Pennsylvania, restrictive covenants are enforceable if they are incident to an employment relationship between the parties; the restrictions imposed by the covenant are reasonably necessary for the protection of the employer; and the restrictions imposed are reasonably limited in duration and geographic extent." *Id.* In other words, a determination of whether a non-compete agreement should be enforced

---

1. Appellant and the trial court have complied with Pa.R.A.P.1925.

"requires the application of a balancing test whereby the court balances the employer's protectible business interests against the interest of the employee in earning a living in his or her chosen profession, trade or occupation, and then balances the result against the interest of the public." *Id.* at 162, 808 A.2d at 920.

¶ 7 Martin's sole contention on appeal is that the covenant in question was not assignable, and, thus, the trial court erred in enforcing it in light of the consolidation between Ehrlich and Rentokil. He relies on *Hess, supra,* and *Savage v. Tanner,* 848 A.2d 150 (Pa.Super.2004).

¶ 8 In *Hess,* Mr. Hess was employed by Eugene Hoaster Co., Inc. (Hoaster), an insurance agency, beginning in 1974. Mr. Hess, an insurance agent, signed an employment agreement which contained a non-compete clause. He remained there until December 1996 after Hoaster sold all of the assets of its insurance business and eliminated Mr. Hess' position. The contract of sale of the assets did encompass existing agreements including that of Mr. Hess and its covenant not to compete; however, Mr. Hess never agreed to the assignment.

¶ 9 Mr. Hess began negotiating for employment with a competitor and used information he obtained from Hoaster in soliciting one of its clients. Hoaster then sent a letter to Mr. Hess reminding him of the non-compete covenant and provided a copy to the competitor, which decided not to employ Mr. Hess. In turn, Mr. Hess filed suit against Hoaster which sought, *inter alia,* voidance of the covenant not to compete. The trial court upheld the covenant in part, and this Court affirmed.

¶ 10 On appeal, our Supreme Court reversed. It noted that the agreement between Hoaster and Mr. Hess was silent on assignability of restrictive covenants. The Court observed "the general proposition that, 'an assignment of a right will not be effective if it purports to make a material change in the duties or responsibilities of the obligor, unless the obligor assents to such changes.'" 570 Pa. at 166, 808 A.2d at 922 (citation omitted). It held "that a restrictive covenant not to compete, contained in an employment agreement, is not assignable to the purchasing business entity, in the absence of a specific assignability provision, where the covenant is included in a sale of assets." *Id.* at 167, 808 A.2d at 922. In other words, "the employee's restrictive covenant is confined to the employer with whom the agreement was made, absent specific provisions for assignability." *Id.* at 167, 808 A.2d at 922. The Court also found significant that the assignment made a material change in Mr. Hess' obligations and emphasized that an employment contract "is personal to the performance of both the employer and the employee." *Id.* at 166, 808 A.2d at 922.

¶ 11 In *Savage,* the defendant eye doctor entered into an employment agreement in 1987 with a firm known as Pugliese Eye Specialists. That agreement included a covenant not to compete as well as a provision that its provisions were assignable if made in writing by the employer and notice thereof delivered to the employee. In 1998, another firm known as Eye Care Consultants, P.C. (Eye Care) purchased Pugliese Eye Specialists and the defendant became an employee of Eye Care. However, Eye Care did not deliver notice of the assignment to the defendant. Relying on *Hess,* we found the employment agreement including its covenant not to compete was assignable by virtue of the language of the agreement itself. 848 A.2d at 154. However, we further found that Eye Care did not meet its obligation to deliver the assignment to the defendant doctor and, thus, did not "effectuate a valid assignment of the employment agreement." *Id.*

at 158. We therefore concluded that the covenant was not enforceable. *Id.*

¶ 12 We find the case at bar is clearly distinguishable from the cases on which Martin relies. Here, unlike in *Savage,* there was no obligation placed on Ehrlich within Martin's employment agreement which required it to perform some act in order to enforce the covenant after the consolidation of Ehrlich and Rentokil. Additionally, unlike in *Hess,* Ehrlich and Rentokil merely accomplished a stock purchase, not the sale of Ehrlich's assets.[2] *See* Stipulation of Fact ¶ 17 and Exhibit F (C.R. at 9). Contrary to Martin's argument that it is "virtually impossible" to ascertain who his employer was after the merger, Appellant's brief at 9, the record clearly establishes that Martin began his employment with and remained an employee of Ehrlich from the initial agreement in April 1988 until the time of his termination in August 2007. Martin does not suggest, and the record does not indicate, that his obligations and duties changed in any material respect after Ehrlich acquired the stock of Rentokil. On the contrary, Martin's employment agreement, including the restrictive covenant, was made with Ehrlich and, as such, is enforceable by Ehrlich, "the employer with whom the agreement was made." *Hess, supra,* 570 Pa. at 167, 808 A.2d at 922. *Cf. All–Pak, Inc. v. Johnston,* 694 A.2d 347 (Pa.Super.1997) (concluding that employment agreement was not assignable to new entity created in sale of company).

¶ 13 In conclusion, we discern no error of law in the trial court's conclusion that Ehrlich established a clear right to relief.

Accordingly, its order granting the permanent injunction must be affirmed.

¶ 14 Order affirmed.

---

**2.** The transaction did include the sale of assets of a subsidiary of Ehrlich. *See* Stipulation of Fact at ¶ 17 and Exhibit F. However, Martin does not contend that this minor occurrence within the context of the consolidation of Ehrlich and Rentokil converts the purchase of stock to a purchase of assets in this case, and we do not so find.