J-A32023-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| EQT PRODUCTION COMPANY AND EQUITRANS, L.P. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RONALD K. TESKA AND GIULIA MANNARINO | |
| Appellants | No. 16 WDA 2015 |

Appeal from the Order December 3, 2014
In the Court of Common Pleas of Greene County
Civil Division at No(s): 217 of 2013

BEFORE:  SHOGAN, J., OTT, J., and STABILE, J.

MEMORANDUM BY OTT, J.:                    **FILED MARCH 17, 2016**

Ronald K. Teska and Giulia Mannarino ("Landowners") appeal, *pro se*, from the order entered on December 3, 2014, which granted a motion for summary judgment filed by Appellees, EQT Corporation, EQT Production Company, Equitable Gas Company, and Equitrans (collectively, "EQT"), and issued a permanent injunction, enjoining and restraining Landowners from interfering with EQT's right of entry upon their property and plugging operation.  On appeal, Landowners argue the court erred in granting the motion for summary judgment and the permanent injunction.  Based on the following, we affirm.

A previous panel of this Court summarized most of the relevant facts and procedural history of this case in the following manner:

This case arises out of a dispute over a gas well located on property currently owned by [Landowners]. On April 28, 1913, Florence and G.E. Houston (the Houstons) and Carnegie Natural Gas Company (Carnegie) entered into a lease. The lease, in relevant part, provided that Carnegie had the right to mine for gas, lay pipelines, and build tanks on the Houstons' land. In exchange, Carnegie agreed to provide the Houstons free gas from any well drilled on the property as well as royalties. Subsequently, Carnegie drilled a shallow well and provided free gas to the Houstons. In 1992, the property, including the mineral and gas rights, was purchased by [Landowners]; and, in 1999, Carnegie assigned its rights under the lease to EQT Production Company. A gathering line owned by Equitrans actually provided the free gas to [Landowners'] home.[1]

[1] The relationship between [the EQT entities] was explained during testimony from EQT Production Company employee Mary Drummond in the hearing on the preliminary injunction on August 20, 2012. EQT Production Company is a gas production company and produces gas from wells. Equitable Gas Company is a separately operated entity that acts as a billing agent for free gas customers. Equitrans is a separate company that owns a "gathering line." N.T., 8/20/2012, at 54-57. The complaint asserted no separate claims against Equitrans.

In February 2011, [Landowners] noticed that a valve on the well that fed the gathering line was in a closed position. Records they obtained from the Pennsylvania Department of Conservation and Natural Resources indicated that the well had last produced gas for use in 2007. On February 28, 2011, [Landowners] sent a certified letter to EQT Production Company to inform them that the gas well had been abandoned, and they returned a semi-annual royalty check. They also inquired about the status of the lease. On October 13, 2011, EQT Production Company filed a Release and Surrender of Oil and Gas Lease in the Greene County Recorder of Deeds. On October 27, 2011, EQT Production Company sent [Landowners] a certified letter notifying [Landowners] that their free gas would be terminated on November 7, 2011. That termination date was extended until March 31, 2012. Equitable Gas Company sought for [Landowners] to sign a Temporary Limited Service Agreement (TLSA) and fill out an application in order to arrange gas service for [Landowners]. Because [Landowners] disagreed with the

manner in which Equitable Gas Company was treating them, they filed a complaint with the Public Utility Commission (PUC).[2]

___

[2] In October 2012, [Landowners] and Equitable Gas Company "agreed to a negotiated Settlement Stipulation prior to the scheduled PUC hearing resulting in [Landowners] officially [becoming] paying Equitable Gas Company customers and gas service was restored." [Landowners'] Brief at 16. Thus, there are no issues to address regarding the [Landowners'] gas service.

Meanwhile, in March 2012, representatives of EQT Production Company and [Landowners] met to discuss the transfer of the gas well, as tests had indicated that the well was not depleted. EQT Corporation notified [Landowners] that EQT Production Company required them to complete certain steps to facilitate transfer of ownership of the well; otherwise, EQT Production Company would be legally required to plug the well. [Landowners] disagreed with the need to complete those steps. Because the discussions about the free gas and the transfer of the well were not progressing, on July 26, 2012, EQT Production Company sent a letter to [Landowners] advising them they would be terminating their free gas service on August 13, 2012, as well as moving forward with plugging the well.

On August 6, 2012, [Landowners] filed *pro se* a complaint for declaratory judgment against [EQT]. In that complaint, [Landowners] sought a declaration that they were the "owners of all rights of every kind" with respect to the gas well, as well as an order for EQT Production Company to transfer the "Operator's Permit" to them. Complaint, 8/6/2012, at 15-16. [Landowners] also sought an injunction to prohibit [EQT] from discontinuing their gas service. ***Id.*** at 16.

On August 10, 2012, [Landowners] filed a "Motion for Emergency Injunctive Relief and Petition for Motion for Preliminary Injunction Hearing." On the same day, [EQT] filed preliminary objections to [Landowners'] motion for injunctive relief, as well as a motion for continuance of the preliminary injunction hearing. On August 10, 2012, the trial court granted [EQT's] request for a continuance of the preliminary injunction hearing and scheduled it for August 20, 2012. The order also provided that EQT Production Company "shall not begin plugging operation before that date." Order, 8/10/2012.

On August 17, 2012, [EQT] filed preliminary objections in the nature of a demurrer to [Landowners'] complaint for declaratory judgment. Specifically, [EQT] asserted, *inter alia*, that even if the well had been abandoned, [Landowners] still had no right to the fixtures associated with the well because Appellants do not meet the definition of "owner" as prescribed by Pennsylvania Department of Environmental Protection regulations. Preliminary Objections to Complaint, 8/17/2012, at ¶¶ 16-27. Moreover, [EQT] argued that as the owners of the well, they were legally obligated to plug it. *Id.* at ¶¶ 32-39.

On August 20, 2012, the trial court held a hearing on the preliminary injunction. On August 21, 2012, the trial court entered an order overruling [EQT's] preliminary objections to the motion for injunctive relief, and dissolving the no-plug order of August 10, 2012.

On November 1, 2012, the trial court sustained [EQT's] preliminary objections in the nature of a demurrer and dismissed [Landowners'] complaint for declaratory judgment. Specifically, the trial court concluded that [EQT] had the right to remove their fixtures from [Landowners'] property and that [EQT] had no duty to transfer ownership of the well to [Landowners]. *See* Trial Court Opinion, 11/1/2012, at 2-3.

*Teska v. EQT Corp.*, 82 A.3d 463 [1983 WDA 2012] (Pa. Super. 2013)

(unpublished memorandum at 1-5), *appeal denied*, 85 A.3d 484 (Pa. 2014)

("*Teska I*").[1]

On June 18, 2013, a panel of this Court affirmed the trial court's order,

which sustained preliminary objections and dismissed Landowners' complaint

_____

[1] The remainder of facts and procedural history of this case have been gleaned from the certified record and the parties' briefs, since no updated trial court opinion was filed. Rather, on January 8, 2014, the court entered an order, resting on previously filed record and decision. *See* Order, 1/8/2014.

for declaratory judgment. Pertinent to this appeal, the panel made the following conclusions: (1) EQT, *via* its predecessor Carnegie Gas Company, was the owner of the well; (2) it had the right to remove its own fixtures from the land; and (3) it could have assigned or sold its ownership of the well to Landowners but was under no obligation to do so. *Id.* at 6-9. The Pennsylvania Supreme Court denied Landowners' petition for allowance of appeal on February 19, 2014.[2]

While Landowners' appeal was pending, EQT attempted to commence plugging operations but Landowners prohibited EQT personnel from accessing the property. As a result, EQT filed a complaint in equity and motion for preliminary injunction against Landowners on March 27, 2013, seeking equitable relief in the form of an injunction that would allow them to access the property for purposes of plugging the well. A hearing was held on April 26, 2013 and May 17, 2013. On May 20, 2013, the court entered

_____

[2] Landowners also filed a separate appeal from a separate order, which was entered on October 22, 2013, raising the following issues: (1) the trial court erred or abused its discretion in making the determination that "continued payment of flat rate royalty by lessees on a nonproductive well, whose lease was held by production and where lessors were not informed that production had ceased, was not a representation but merely a 'contractual obligation'"; and (2) the trial court erred or abused its discretion in making the determination that "continued payment of flat rate royalty by lessees on a nonproductive well, whose lease was held by production and where lessors were not informed that production had ceased, established a tenancy at will without the knowledge and mutual consent of lessors." ***Teska v. EQT Corp.***, 106 A.3d 177 [1983 WDA 2012] (Pa. Super. 2014) (unpublished memorandum at 4-5) ("***Teska II***"). A panel of this Court affirmed the trial court's decision.

an order denying the preliminary injunction, due, in part, to the fact that Landowners' appeal in the related matter was pending.[3]

On October 14, 2014, after Landowners' appeal was decided, EQT filed a motion for summary judgment, arguing: (1) EQT's clear right to relief is demonstrated by the fact that it is the statutory owner of the well and is legally obligated to plug the well; (2) equitable relief is necessary because monetary damages alone would not prevent Landowners from interfering with its statutory requirement to plug the well and its harm cannot be monetarily assessed; and (3) EQT would face a significantly greater injury from the denial of a permanent injunction because, without it, EQT would face regulatory fines, significant financial liability, and responsibility for environmental, health, and safety issues related to the well's current condition. ***See*** EQT's Motion for Summary Judgment, 10/14/2014, at 6-12.

On November 20, 2014, Landowners filed an opposition to EQT's motion for summary judgment, alleging: (1) EQT, as statutory "owner," did not come to court with clean hands because they intentionally overlooked their legal obligation to plug the well for many years and their present interest in plugging it was retaliatory; (2) EQT is not entitled to equitable relief because there was an adequate administrative remedy available, there was no actual harm to EQT, and because plugging the well is no longer

_____

[3] During this time, the presiding judge retired, and President Judge Toothman was appointed to handle the matter.

statutorily required; and (3) Landowners face far greater injury if the injunction is granted than if it is not granted because plugging the well will be environmentally hazardous and all of EQT's future liability could be easily transferred. *See* Landowners' Opposition to EQT's Motion for Summary Judgment, 11/20/2014, at 8-16.

On December 3, 2014, the trial court granted the motion for summary judgment and issued a permanent injunction, enjoining and restraining Landowners from denying or interfering with EQT's right of entry upon the property and its plugging operations. This *pro se* appeal followed.[4]

In Landowners' first issue, they contend the court erred in granting EQT's motion for summary judgment and in making the determination that no genuine issue of material fact regarding the plugging of the gas well still exists. *See* Landowners' Brief at 13. They state that ownership of the well is not the only material fact at issue in this case, and assert there are two other equally important issues: (1) the environmental issues arising out of the plugging of the well; and (2) the irreparable harm Landowners could suffer. *Id.* Landowners allege the plugging of well would result in negative environmental consequences, including the contamination or diminution of their domestic household water supply. *Id.* at 14. As proof, they point to

_____

[4] The court did not order Landowners to file a concise statement of errors complained of on appeal under Pa.R.A.P. 1925(b). Nevertheless, Landowners filed a concise statement on January 29, 2015.

the fact that a spring on their property was lost due to the plugging of a gas well on an adjacent property. *Id.* Additionally, Landowners assert that "[a]lthough this case involves the same gas well and parties as the prior cases, the issue still under dispute is not identical to the issues resolved previously as it does not revolve around 'ownership' of or rights to the gas well but rather the consequences/necessity of its plugging." *Id.* Landowners claim they deserve "the opportunity to conduct discovery to get more information about EQT's decision and their motives behind it." *Id.*[5]

_____

[5] Landowners also imply that because the current presiding judge took over the case after the declaratory judgment proceedings were decided, he was "unfamiliar with the case" since he "did not sit throughout the past proceedings and was not involved in the earlier rulings or a close examination of all of the issues." Landowners' Brief at 15. This allegation is self-defeating because as stated above, Landowners claim the issue that is still in dispute "is not identical to the issues resolved previously as it does not revolved around 'ownership' of or rights to the gas well[.]" *Id.* Therefore, it would be of no consequence if the presiding judge was not the same individual as ownership is not at issue. Moreover, other than bald allegations, Landowners do not present any evidence that the presiding judge was not well-prepared or acquainted with the pertinent facts and law.

Moreover, Landowners contend (1) they were barraged with court filings by EQT, which they claim bordered on frivolous, (2) they "have erroneously been waiting for some direction from the court regarding the start of [d]iscovery," and (3) "they certainly cannot be expected to be as familiar with the court process." *Id.* at 16-17. We point to the following:

> Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant. To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing.

*(Footnote Continued Next Page)*

We observe our well-settled standard of review as follows:

Our scope of review of an order granting summary judgment is plenary. [W]e apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.

Motions for summary judgment necessarily and directly implicate the plaintiff's proof of the elements of his cause of action. ... Thus, a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the [fact-finder]. Upon appellate review, we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The appellate Court may disturb the trial court's order only upon an error of law or an abuse of discretion.

*Pa. Servs. Corp. v. Tex. E. Transmission, LP*, 98 A.3d 624, 629 (Pa. Super. 2014), *quoting* *DeArmitt v. New York Life Ins. Co.*, 3 A.3d 578, 585-86 (Pa. Super. 2013) (citations and quotation marks omitted).

Furthermore, Pennsylvania Rule of Civil Procedure 1035.2 provides the standard for granting a motion for summary judgment, as follows:

After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

_____

*(Footnote Continued)* ———————————

*In re Ullman*, 995 A.2d 1207, 1211-1212 (Pa. Super. 2010).

> (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or
>
> (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2.

Additionally, Rule 1035.3 of the Pennsylvania Rules of Civil Procedure states in pertinent part:

> Rule 1035.3. Response. Judgment for Failure to Respond
>
> (a) Except as provided in subdivision (e), the adverse party may not rest upon the mere allegations or denials of the pleadings but must file a response within thirty days after service of the motion identifying
>
> (1) one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion or from a challenge to the credibility of one or more witnesses testifying in support of the motion, or
>
> (2) evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced.

Pa.R.C.P. 1035.3(a)(1)-(2).

Turning to the present matter, with respect to EQT's motion for summary judgment, the issue was whether EQT was entitled to a permanent injunction based on its property interest in the well. As will be discussed in more detail with our analysis of the second issue, we briefly note the following:

- 10 -

> To be entitled to a permanent injunction, a party must establish a clear right to relief, and must have no adequate remedy at law, *i.e.*, damages will not compensate for the injury. Unlike a preliminary injunction, a permanent injunction does not require proof of immediate irreparable harm.
>
> *Liberty Place Retail Assocs., L.P. v. Israelite Sch. of Universal Practical Knowledge*, 2014 PA Super 233, 102 A.3d 501, 505-06 (Pa. Super. 2014) (internal citations omitted).

*PA Energy Vision, LLC v. South Avis Realty, Inc.*, 120 A.3d 1008, 1013 (Pa. Super. 2015).

Landowners acknowledge that EQT is the owner of the well, which also was affirmed by the courts in prior decisions. *See* Landowners' Brief at 13, 17; *Teska I*, *supra.* Nevertheless, they state there are two outstanding genuine issues of material fact: (1) the environmental issues arising out of the plugging of the well; and (2) the irreparable harm they could suffer. *Id.* However, in their brief, Landowners only discuss the alleged negative environmental consequences. *Id.* at 14.[6] As stated above, in support of their claim regarding environmental harm, they merely point to the fact that a spring on their property was lost due to the plugging of a gas well on an adjacent property.

_____

[6] The fact that Landowners did not make any arguments regarding irreparable harm is of no consequence since "a permanent injunction does not require proof of immediate irreparable harm." *PA Energy Vision, LLC*, 120 A.3d at 1013.

A review of the record reveals that other than meager allegations made in the pleadings, the only evidence regarding the environmental harm is Landowners' Exhibit C, which was introduced at the hearing on the motion for summary judgment. Exhibit C is a May 23, 2012, letter from Brian J. Lohr, a geologic specialist of the District Mining Office, to Christopher Rabbitt, of Consol Pennsylvania Coal Company, LLC, concerning the approval of a water supply replacement plan. At the hearing, the following exchange took place regarding the exhibit and the spring:

> [LANDOWNERS]: The relevance, if I may explain, is the fact that this is a claim for the spring that disappeared due to the well that was plugged so close to it on our property. The spring was on our property. The well that was plugged on the neighbor's property, DeSimone, caused the spring to practically disappear. We talked to Consol [Energy] about it, and they filed paperwork with [the Pennsylvania Department of Environmental Protection ("DEP")] to try to find a resolution to this consequence.

> THE COURT: Well, okay. But listen. Remember what we're here for. And I think what you're telling me is that on the neighboring property there was a well plugging operation. And that that well plugging operation interfered with the spring that you relied on for your water supply?

> [LANDOWNERS]: The spring was not to our house; the spring was actually watering our Blueberry plants.

> THE COURT: Okay. You had an interest in it?

> [LANDOWNERS]: Yes.

> THE COURT: And the spring was on your property?

> [LANDOWNERS]: Yes.

- 12 -

THE COURT: Okay. And if somebody interfered with something you had by its activities, then you might have some cause of action against that entity. That isn't this entity, and that's not this well. And the purpose of this is to show what? That it might interfere with something else?

[LANDOWNERS]: Yes. The fact that our domestic household water supply well is much closer to the well that they want to plug than our spring was to this well that was plugged.

THE COURT: Okay.

[LANDOWNERS]: That there is the potential for some kind of damage to our household water supply. And that is also verified by the fact that the state requires that water samples be taken before wells are altered.

THE COURT: They told me they asked you for a water sample, and you refused.

[LANDOWNERS]: We refused because of the case that is still pending.

…

[LANDOWNERS]: But, Your Honor, if you allow the plugging to go on, it's like putting a man in the electric chair before his DNA hearing occurs to prove he's innocent.

THE COURT: [Landowners], nobody is going to get hurt.

[LANDOWNERS]: Oh, Your Honor, I disagree.

THE COURT: You might be inconvenienced and you might suffer monetary loss. Nobody is going to get hurt.

[EQT'S COUNSEL]: If I may, Your Honor. I think the Court hit the nail on the head with this line of questioning, that I think it's not relevant or germane to the issue before the Court, and I think I'm going to object to this line of questioning so that we can move on with the testimony that's relevant to the case before the Court.

- 13 -

THE COURT: Well, let me ask you this: Are you prepared to offer expert testimony that plugging this well will interfere with your domestic water supply?

[LANDOWNERS]: No. But there is no one that can offer testimony that it won't, I don't believe.

…

[LANDOWNERS]: I think our point is that we don't believe their right to relief is clear, because we still have a legal controversy about who actually has the rights to this well. And they want to plug it, and we want to use it. It's the same issue as the case that's pending.

And there's the possibility of contamination or diminishing of water supplies. That's why our neighbors' water supplies have to be tested and why our water supply does.

…

THE COURT: Well, if what you are attempting to show, is that because an interruption of water supply occurred when a well was plugged on a neighbor's property, that makes it more likely than not that this plugging operation will interfere with your water supply, then I'm going to agree with [EQT'S counsel] that's irrelevant to this proceeding.

N.T., 4/26/2013-5/17/2013, at 72-79.

Based on Landowners' paucity of evidence presented at the hearing, we find their allegation amounts to a bald, speculative assertion that there would be negative environmental consequences to the plugging of the well. As pointed out by the trial court, Landowners have not presented any expert opinions or reports that plugging would have any relevant, negative results. They merely have presented evidence that the plugging of a well on **another person's property** affected the spring that supplies water to

Landowners' blueberry plants. Contrary to Rule 1035.3, Landowners did not meet their burden of presenting evidence that established facts essential to their defense to EQT's right to access the well on their property.

Moreover, to the extent that Landowners request more time to conduct discovery to determine EQT's motives, we are guided by the following:

> We … recognize that "the party seeking discovery is under an obligation to seek discovery in a timely fashion." ***Reeves v. Middletown Athletic Ass'n***, 866 A.2d 1115, 1124 (Pa.Super.2004); ***see Fort Cherry School Dist. v. Gedman***, 894 A.2d 135, 140 (Pa.Super.2006) (reasoning "[t]he Pennsylvania Rules of Civil Procedure do not give [parties] an unlimited amount of time to conduct discovery"). However, this Court has unequivocally stated that the purpose of Rule 1035.2 "is to eliminate cases prior to trial where a party cannot make out a claim or defense after relevant discovery has been completed; the intent is not to eliminate meritorious claims prematurely before relevant discovery has been completed." ***Burger v. Owens Illinois, Inc.***, 966 A.2d 611, 618 (Pa.Super.2009), *quoting* ***Gerrow***, *supra* at 781–782. Moreover, "[t]he adverse party must be given adequate time to develop the case and the motion [for summary judgment] will be premature if filed before the adverse party has completed discovery relevant to the motion." ***Id.***

***Anthony Biddle Contractors, Inc. v. Preet Allied Am. St., LP***, 28 A.3d 916, 928-929 (Pa. Super. 2011) (footnote omitted).

Here, Landowners have had ample opportunity to request discovery since the matter initially began in August of 2012. Moreover, we find that evidence of EQT's alleged "motives" is irrelevant to the question of whether the plugging of the well will have a negative environmental impact, and does not, therefore, raise a genuine issue of material fact. Additionally, from our review of the record and the briefs, it appears that this is the first time that

Landowners are making a discovery request. *See* Pa. R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). While Landowners claim they are not familiar with the judicial process, we reiterate they have

> chosen to proceed *pro se* and [they] cannot expect our court [or the trial court] to act as [their] attorney. *See Commonwealth v. Sanford*, 299 Pa.Super. 64, 445 A.2d 149, 150 (1982) ("We decline to become appellant's counsel. When issues are not properly raised and developed in briefs, when the briefs are wholly inadequate to present specific issues for review, a court will not consider the merits thereof.")

*First Union Mortgage Corp. v. Frempong*, 744 A.2d 327, 337-38 (Pa. Super. 1999). Accordingly, we conclude Landowner's first argument warrants no relief.

In Landowners' second issue, they contend the court erred in issuing the permanent injunction for various reasons: (1) the evidence submitted by EQT does not satisfy all three of the elements required for a permanent injunction, (2) administrative remedies have not been exhausted; and (3) EQT has not come before the court with "clean hands." Landowners' Brief at 17.

With respect to the elements of a permanent injunction, Landowners state that while EQT's right to the well may be clear, it "has not submitted adequate evidence that [it] would suffer any injury or harm that could not be monetarily compensated if the gas well is not plugged" and it "also failed to provide evidence that greater injury would result if the Permanent

- 16 -

Injunction [was not] granted." *Id.* at 18. Landowners' argument focuses on EQT's claim that it would face the harm of fines from the regulatory agency, the DEP, for being in violation of the plugging requirement. Landowners allege EQT abandoned the well in 2007, and state they have been in contact with DEP employees regarding the "abandonment" and plugging of the well and "EQT has not been fined to date and it is very unlikely [it] ever will be." *Id.* at 19. Additionally, Landowners obscurely claim,

> [A] more than reasonable amount of time has passed since the plugging was statutorily required. EQT did not have any concerns about [its] liability or possible environmental hazards due to the well not being plugged, as required, for the many years [it was] in violation of this statute. Now [it is] playing the role of a prudent, concerned operator and alleging an urgent necessity to avoid injury and harm because the well is required to be plugged. In fact, circumstances have changed. A [Department of Transportation ("DOT")] certified plumber has run a gas line from the gas well and it is now producing gas for domestic household use. Because the well is no longer statutorily abandoned (*i.e.* not producing in the prior 12 months), the plugging is now no longer statutorily required.

*Id.* (reproduced record citations omitted).

Lastly, with respect to their "unclean hands" argument, Landowners point to the following: (1) EQT "intentionally ignored the plugging requirement as this operation would have alerted [them] to the fact that their lease, which was held by production with no provisions to extend it without production, was no longer valid" and is evidenced by the fact that

EQT continued the lease by payment of the semi-annual royalty;[7] (2) EQT refused "to negotiate terms of the well transfer;"[8] and (3) EQT does not qualify for injunction because "there is an administrative remedy provided by the Oil and Gas Act" contained in 58 Pa.C.S. § 3251.[9, 10]

As noted ***supra***,

> [t]o be entitled to a permanent injunction, a party must establish a clear right to relief, and must have no adequate remedy at law, *i.e.*, damages will not compensate for the injury. ***J.C. Ehrlich Co. v. Martin***, 2009 PA Super 127, 979 A.2d 862, 864 (Pa. Super. 2009) (quoting ***Pestco, Inc. v. Associated Prods.***, 2005 PA Super 276, 880 A.2d 700, 710 (Pa. Super. 2005)).
>
> …
>
> The grant or denial of a permanent injunction is a question of law. ***Buffalo Township v. Jones***, 571 Pa. 637, 813 A.2d 659, 664 & n.4 (Pa. 2002). Regarding the trial court's legal determination, our standard of review is *de novo*, and our scope of review is plenary. ***Id.***; ***J.C. Ehrlich***, 979 A.2d at 864. As in all equity matters, however, we must accept the trial court's factual findings and give them the weight of a jury verdict where they are supported by competent evidence. ***RESPA of Pa., Inc. v. Skillman***, 2001 PA Super 30, 768 A.2d 335, 339 (Pa. Super.

---

[7] Landowners' Brief at 20.

[8] ***Id.*** at 21.

[9] ***Id.*** Landowners cite "52 Section 601.501" in their brief, which does not produce any statutory provision. ***Id.*** They also reference page nine in their answer to EQT's complaint, which does cite Section 3251. Therefore, we will use that citation in our analysis.

[10] Landowners also complain for the first time that the terms of the permanent injunction "are unreasonable and are physically impossible for anyone to comply." ***Id.*** at 22. Because they did not raise this claim with the trial court, it is waived on appeal. ***See*** Pa.R.A.P. 302.

2001), abrogated on other grounds by Buffalo Township, 813 A.2d at 664 n.4.

***Liberty Place Retail Assocs., L.P. v. Israelite Sch. of Universal Practical Knowledge***, 102 A.3d 501, 505-506 (Pa. Super. 2014).

Initially, we note that contrary to Landowners' unrelenting insinuation that EQT had abandoned its interest in the well prior to filing its October 12, 2011, release and surrender of oil and gas lease documentation, the trial court found EQT was still the owner of the well and its fixtures, which was affirmed by this Court and the Pennsylvania Supreme Court. ***See Teska I***, ***supra***. As such, EQT's ownership established a clear right to relief. ***See Buffalo Twp.***, ***supra*** (upheld finding that railroad did not abandon right-of-way property, the property did not revert to landowners merely because of nonuse, and therefore, the trial court properly enjoined the landowners from interfering with property interest).[11] Moreover, EQT established that as the

_____

[11] We also note in ***Buffalo Twp.***, the Supreme Court opined on abandonment in terms of an easement interest as follows:

> In evaluating whether the user abandoned the property, the court must consider whether there was an intention to abandon the property interest, together with external acts by which such intention is carried into effect. In order to establish the abandonment of a right-of-way, the evidence must show that the easement holder intended to give up its right to use the easement permanently. Such conduct must consist of some affirmative act on his part which renders use of the easement impossible, or of some physical obstruction of it by him in a manner that is inconsistent with its further enjoyment. Mere nonuse by the railroad does not amount to abandonment.

*(Footnote Continued Next Page)*

owner and operator of the well, it was legally required to plug the well in conformity with DEP regulations. **See** 58 Pa.C.S. § 3203 (defining "owner" and "operator"); **see also** 25 Pa. Code § 78.91 ("Upon abandoning a well, the owner or operator shall plug the well under §§ 78.92 -- 78.98 or an approved alternate method under section 211 of the act (58 P.S. § 601.211) to stop the vertical flow of fluids or gas within the well bore[.]"); 58 Pa.C.S. § 3220 ("Upon abandoning a well, the owner or operator shall plug it in the manner prescribed by regulation of the department to stop vertical flow of fluids or gas within the well bore, unless the department has granted inactive status for the well or it has been approved by the department as an orphan well.").

Likewise, EQT also demonstrated that an injunction was necessary because the harm that was occurring, Landowners' interference with its property interest, could not be monetarily assessed. As EQT notes, it faces fines because it "would be noncompliant with state and local environmental laws, and unable to exercise [its] legal rights in accessing and controlling [its] property." EQT's Brief at 24. **See** 58 Pa.C.S. § 3255(a) ("A person

*(Footnote Continued)* ───────────────

**Buffalo Twp.**, 813 A.2d at 664-665 (internal citations and quotation marks omitted).

Turning to the present matter, other than allegations of nonuse, Landowners have not put forth any other argument to establish that EQT effectively abandoned its property interest in the well.

- 20 -

violating a provision of this chapter commits a summary offense and, upon conviction, shall be sentenced to pay a fine of not more than $ 1,000 or to imprisonment of not more than 90 days, or both. Each day during which the violation continues is a separate and distinct offense."); 58 Pa.C.S. § 3256 ("In addition to other remedies available at law or in equity for a violation of this chapter, a regulation of the department, a departmental order or a permit condition, the department, after a hearing, may assess a civil penalty regardless of whether the violation was willful. The penalty shall not exceed $ 25,000 plus $ 1,000 for each day during which the violation continues or, in the case of a violation arising from the construction, alteration or operation of an unconventional well, $ 75,000 plus $ 5,000 for each day during which the violation continues.").

To the extent Landowners claim EQT has not been fined and will not be fined in the future, their argument amounts to nothing more than speculation as they rely on bald assertions alleged in their pleadings[12] and did not present any other evidence to support their contention. Moreover, with regard to Landowners' challenge that plugging is now no longer statutorily required because Landowners procured a plumber to run a gas line from the gas well and it is now producing gas for domestic household

---

[12] **See** Landowners' Answer to EQT's Complaint in Civil Action and Claims for Injunctive and Other Equitable Relief and New Matter, 6/18/2013, at 7; Landowners' Opposition to EQT's Motion for Summary Judgment, 11/20/2014, at 13.

use, we find this issue without merit for several reasons. First, it appears that in addition to prohibiting EQT access to the well, Landowners are further harming EQT's legally-recognized property interest in the well by adapting it without EQT's consent. Second, as EQT points out,[13] Landowners do not point to any statutory provision, which permits their unauthorized modification.

Lastly, with respect to Landowner's "unclean hands" argument, we are guided by the following: The Pennsylvania Supreme Court has explained the doctrine of unclean hands as "a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." *Jacobs v. Halloran,* 710 A.2d 1098, 1103 (Pa. 1999), *citing **Shapiro v. Shapiro**,* 204 A.2d 266, 268 (1964).

In *Lucey v. W.C.A.B. (Vy-Cal Plastics PMA Group)*, 732 A.2d 1201 (Pa. 1999), the Supreme Court further discussed what constitutes unclean hands as follows:

> The doctrine of unclean hands is derived from the unwillingness of a court to give relief to a suitor who has conducted himself so as to offend the moral sensibilities of the judge, and the doctrine has nothing to do with the rights and liabilities of the parties. *In re Estate of Pedrick,* 505 Pa. 530, 544, 482 A.2d 215, 222 (1984). This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with iniquity or bad faith

---

[13] EQT's Brief at 24.

relative to the matter in which he seeks relief. This doctrine is rooted in the historical concept of a court of equity as a vehicle for affirmatively enforcing the requirement of conscience and good faith. Thus, while equity does not demand that its suitors shall have led blameless lives as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue. *See Id.* (citing *Shapiro v. Shapiro*, 415 Pa. 503, 506-507, 204 A.2d 266, 268 (1964) (quoting *Precision Instrument Mfg. Co. v. Automotive Maintenance Mach. Co.,* 324 U.S. 806, 814-815, 65 S.Ct. 993, 997-998, 89 L.Ed. 1381 (1945))).

*Lucey*, 732 A.2d at 1204-1205.

The application of the doctrine to deny relief is within the discretion of the [trial court], and in exercising [its] discretion the [trial court] is free not to apply the doctrine if a consideration of the entire record convinces [it] that an inequitable result will be reached by applying it.

*In re Bosley*, 26 A.3d 1104, 1114 (Pa. Super. 2011), *quoting Stauffer v. Stauffer*, 351 A.2d 236, 245 (Pa. 1976). "The bar of unclean hands is applicable in Pennsylvania only where the wrongdoing of the plaintiff directly affects the equitable relationship subsisting between the parties and is directly connected with the matter in controversy." *Id.,* 351 A.2d at 244. *See also Equibank v. Adle, Inc.,* 595 A.2d 1284, 1287 (Pa. Super. 1991) ("The doctrine does not bar relief to a party merely because his conduct in general has been shown not to be blameless.").

Here, Landowners' claim that EQT was allegedly deceitful by ignoring the plugging requirement and continuing to pay them royalties is disproved by the fact that in the earlier declaratory judgment action, the trial court concluded, and a panel of this Court agreed, that the continued payments by

EQT of the flat rate royalty on the nonproductive gas well were not evidence of a fraudulent misrepresentation because the lease was still in effect at the time EQT proferred the lease payments. *See Teska II*, *supra*.

Furthermore, their argument that EQT acted with unclean hands by purportedly refusing to negotiate terms of the well transfer is contradicted by the fact that in *Teska I*, the panel determined EQT could have assigned or sold its ownership of the well to Landowners, but was under **no obligation** to do so. *See Teska I*, *supra*. Other than a bald assertion that EQT included additional provisions designed to maintain involvement in the future operation of the well, Landowners also do not present any factual evidence that EQT acted fraudulently or deceitfully with respect to the negotiations. *See Lucey*, *supra*.

Lastly, Landowners argue EQT does not qualify for injunctive relief because there is an administrative remedy provided by Section 3251 of the Oil and Gas Act.[14] This contention, however, is similarly unavailing. As EQT

_____

[14] Section 3251 provides, in pertinent part:

> The department or any person having a direct interest in a matter subject to this chapter may, at any time, request that a conference be held to discuss and attempt to resolve by mutual agreement a matter arising under this chapter. Unless otherwise provided, conferences shall be held within 90 days after a request is received by the department, and notice shall be given by the department to all interested parties. A representative of the department shall attend the conference and the department may make recommendations. An agreement reached at a

*(Footnote Continued Next Page)*

points out,[15] Chapter 32 of Oil and Gas Act deals with oil and gas resource development and does not concern disputes involving well ownership. **See** 58 Pa.C.S. § 3202 (declaration of purpose of chapter). Moreover, as stated **supra**, EQT was under no legal obligation to assign its property interest to Landowners and therefore, a conference remedy under Section 3251 was not applicable to the present matter. While EQT may have not been amenable in negotiations, Landowners have not demonstrated any wrongdoing on EQT's part directly affected the equitable relationship between the parties and was directly connected with the matter at hand. **Stauffer**, 351 A.2d at 244. Therefore, Landowners' second argument also fails.

Accordingly, we conclude the trial court did not err in granting EQT's motion for summary judgment and issuing a permanent injunction against Landowners.

Order affirmed.

_(Footnote Continued)_ ————————————

conference shall be consistent with this chapter and, if approved by the department, it shall be reduced to writing and shall be effective, unless reviewed and rejected by the department within ten days after the conference. The record of an agreement approved by the department shall be kept on file by the department and copies shall be furnished to the parties. The scheduling of a conference shall have no effect on the department's authority to issue orders to compel compliance with this chapter.

58 Pa.C.S. § 3251(a).

[15] **See** EQT's Brief at 30-31.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/17/2016