J-A06022-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SHAWN & VALERIE CLARK | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| MARK AND SUSAN AND HELEN FRITZ | |
| Appellants | No. 1085 MDA 2015 |

Appeal from the Judgment Entered August 7, 2015
In the Court of Common Pleas of Berks County
Civil Division at No(s): 13-2044

BEFORE:  LAZARUS, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED MAY 06, 2016**

Mark and Susan Fritz (h/w) and Helen Fritz (collectively the "Fritzes") appeal from the judgment, entered on a verdict in favor of Appellees, Shawn and Valerie Clark, (h/w) (the "Clarks"), after the court granted a permanent injunction[1] in the underlying equity action.  After careful review, we affirm.

_____

[1] When an appellate court reviews the grant of a permanent injunction, its scope of review is plenary. ***Kuznik v. Westmoreland County Bd. of Comm'rs***, 902 A.2d 476, 489 (Pa. 2006).  On appeal, our inquiry concerns whether the lower court's legal determination that the plaintiff established a clear right to relief, as a matter of law, was proper.  Accordingly, our standard of review is de novo. ***Seven Springs Farm, Inc. v. Croker***, 801 A.2d 1212, 1216 n.1 (Pa. 2002) (standard of review for questions of law is de novo).  Moreover,

> [t]o be entitled to a permanent injunction, a party must establish a clear right to relief, and must have no adequate remedy at law, i.e., damages will not compensate for the injury. ***J.C Erlich Co. v. Martin***, [] 979 A.2d 862, 864 (Pa. Super.

*(Footnote Continued Next Page)*

In July 2001, the Fritzes purchased and installed on their property a Phase-2,[2] 400,000 BTU outdoor wood-fired burner (OWB/furnace).[3]  The total cost of the unit, including installation, was $30,000.  N.T. Non-Jury Trial, 4/8/15, at 592.  The furnace was used year-round to heat the interior

_(Footnote Continued)_ ───────────

2009) (quoting Pestco, Inc., [] 880 A.2d [at] 710[.]  Unlike a preliminary injunction, a permanent injunction does not require proof of immediate irreparable harm.  **_Id._**

**_Liberty Place Retail Assocs., L.P. v. Israelite Sch. of Universal Practical Knowledge, et al._**, 102 A.3d 501, 506  (Pa. Super. 2014).

[2] Phase-2 denotes a newer model wood-fired boiler that is more efficient than older models, resulting in reduced emissions of particulate matter equal and less than 2.5 micrometers in diameter (PM2.5) which negatively impact the environmental and public health.  **_See_** 40 Pa. Bull. 5571 (October 10, 2010).

[3] OWBs, also referred to as outdoor wood-fired furnaces, outdoor wood-burning appliances or outdoor hydronic heaters, are free-standing fuel-burning devices designed:  (1) to burn clean wood or other approved solid fuels; (2) specifically for outdoor installation or installation in structures not normally intended for habitation by humans or domestic animals, such as garages; and (3) to heat building space or water by means of distribution, typically through pipes, of a fluid heated in the device, typically water or a water and antifreeze mixture.  OWBs are sold to heat homes and buildings and to produce domestic hot water.  **_See_** http://www.pabulletin.com/secure/data/vol40/40-40/1876.html (last visited April 4, 2016).  The specific model owned by the Fritzes, the Optimizer 350, is manufactured by Portage & Main.  The gases burned in this furnace reach temperatures of in excess of 2000 degrees Fahrenheit. The process of "gasification" that is used in the operation of the Optimizer 350 is defined as, "out combustion, with a controlled amount of oxygen and/or steam." http://www.gasification-syngas.org/technology/the-gasification-process (last visited April 6, 2016).

of their residences[4] as well as their water supply.[5] Mr. Fritz testified that he primarily burned seasoned hard wood in the furnace. *Id.* at 591. The furnace greatly reduced the Fritzes' heating expenses compared to what it had cost them to run their standard home oil-based heating system.[6] The furnace is located approximately 420 feet to the west of the Clarks' property line and 670 feet west of the Clarks' residence. The topography of the parties' land is primarily rolling hills.

The Fritzes obtained the requisite township permits and uniform construction code permit for the furnace. The Fritzes complied with all zoning and building regulations, as well as manufacturer's instructions, when installing and using the furnace. One of those instructions included locating the unit downwind from their residences. The unit also complies with Environmental Protection Agency (EPA) standards. However, notably, the EPA requires that manufacturers provide all potential buyers of Phase II furnaces the following information in their respective owner's manuals:

---

[4] The Fritzes own two adjoining lots, located on a span of 6 acres in Tilden Township, Berks County. Two residences are on the lots; Mark and Susan live together in one home, and Mark's mother, Helen, lives in the other home. The furnace was able to heat the interior and water supplies of both residences.

[5] The unit was operated year-round (twenty-four hours a day, seven days a week and 365 days a year) as it also heated the Fritzes' reptiles.

[6] The Fritzes have an oil furnace in their home that is still operable, which they have been using as their heat source since they were ordered to stop operating the furnace.

Statements indicating that the person(s) operating a hydronic heater is/are responsible for operation in a manner that does not create a public or private nuisance condition. The manufacturer's distance and stack height recommendations and the requirements in any applicable laws or other requirements may not always be adequate to prevent nuisance conditions due to terrain or other factors.

EPA Hydronic Heater Program, Phase 2 Partnership Agreement, 10/12/11, at § VI(A)(5) (Outreach Materials; Owner's Manuel Statement).

On February 13, 2013, the Clarks filed a civil action in equity, sounding in private nuisance and trespass, seeking to enjoin the Fritzes from causing further damage to them and their property. In the complaint, the Clarks averred that when the prevailing winds blow from west to east, the furnace's strong, pungent and foul-smelling smoke would descend upon their property and cause them to suffer from any and all of the following conditions: burning in their eyes, throats and lungs, sore throats, and headaches. As a result of the odor emanating from the furnace, the Clarks had to close their windows and doors and keep the air conditioning on throughout the year.[7] Despite these measures, it was virtually impossible to keep all of the fumes from permeating their home through vents and the fireplace. Overall, the fumes prevented the Clarks from enjoying any outdoor activities on their property. Despite several requests by the Clarks that the Fritzes cease using the furnace, as well as requests that the Fritzes

_____

[7] Mr. Clark kept a log which indicated that irritating smoke came out of the Fritzes' furnace 210 days out of the first 365 days of its use.

- 4 -

raise the smoke stack of the unit, the quantity of smoke drifting onto the Clarks' property did not decrease or cease.

The Clarks also filed a separate petition for special relief in the nature of a preliminary injunction against the Fritzes, claiming that smoke from the furnace was entering their home and causing adverse health effects on their entire family, including their young child and family dog. The Fritzes filed preliminary objections to the complaint, to which the Clarks filed an answer. On May 6, 2013, the court dismissed the Fritzes' preliminary objections.

On May 21, 2013 and June 4, 2013, the court held hearings on the Clarks' request for a preliminary injunction. On June 10, 2013, the court entered an order granting injunctive relief finding that:

> [P]laintiffs have met the burden of proof that a party must establish in order to obtain preliminary injunctive relief . . . and that defendants' outdoor wood burning furnace is a private nuisance as it presently exists and, as such, defendant is prohibited from using the outdoor wood burning furnace in its present location. Defendants may submit a plan to relocate the outdoor wood burning furnace elsewhere on their property that does not disturb the peaceful use and enjoyment of any of the neighbors.

Order, 6/11/13. Despite the court's suggestion that the Fritzes relocate the unit, they did not attempt to do so. After the Fritzes ceased using the furnace, there was no more smoke in the air, the Clarks' physical problems subsided and they were able to fully enjoy use of their property.

Days after the court issued the preliminary injunction, Mr. Fritz constructed a 55-gallon burn barrel,[8] ignited a fire in the barrel, burned various items (including household trash) in it, and placed it on the edge of Helen's property that bordered the Clarks' property. Mr. Fritz tended to the fire, which was continuously stoked for 13 hours, as he sat in a lounge chair under a sun umbrella while drinking beer.[9]

On May 22, 2015, after a bench trial and three days of testimony, the court entered a permanent injunction that prohibited the Fritzes from using the furnace and, again, gave them the opportunity to relocate the furnace to an area that would not interfere with the Clarks' use and enjoyment of their property. The court also assessed $1,500 in punitive damages against the Fritzes "due to Defendants' reckless indifference to the right of Plaintiffs to enjoy the clean air and peaceful enjoyment of the property." Order, 5/27/15. Finally, the court prohibited the Fritzes from "any open burning, including barrel burning, within 150 feet of the border of Plaintiffs' property line." *Id.* On June 5, 2015, the Fritzes filed post-trial motions, which were denied on June 9, 2015. This timely appeal follows.[10]

_____

[8] A burn barrel is a homemade incinerator constructed of a metal 55 gallon open head drum, modified to burn household trash.

[9] Mr. Fritz continued to use the barrel for months thereafter.

[10] The Fritzes also filed an application for a supersedeas to stay the verdict pending appeal, pursuant to Pa.R.A.P. 1731. The application was denied by the trial court.

On appeal, the Fritzes[11] raise the following issues for our consideration:[12]

(1) Whether the court erred by refusing to decide Appellant's motions in liminae [sic], preventing a clear record for appeal;

(2) Whether the trial court erred by allowing Appellees to testify to their medical conditions pursuant to the use of the furnace;

(3) Whether the trial court improperly allowed Appellees' expert report and testimony of Alan R. Leston into evidence;

(4) Whether the court, sitting as factfinder, improperly conducted its own independent research which it relied upon in granting the permanent injunction;

---

[11] We note that Susan and Mark Fritz and Helen Fritz have filed separately counseled appellate briefs in the instant matter. We have consolidated their issues, several of which overlap, for review on appeal.

[12] In her appellate brief under the section titled, "Statement of Issue Raised," Helen Fritz states the following: Whether the lower court abused its discretion by granting a permanent injunction against Appellants' future use of their wood furnace used to heat their home and water supply and also assessing punitive damages after a non-jury trial before the Honorable Jeffrey K. Sprecher. Appellant's Brief, at 2. However, she argues the issues raised above in her brief which are marginally related to the overall issue of whether the court properly granted a permanent injunction. *See* Pa.R.A.P. 2116(a) (statement deemed to include *every subsidiary question fairly comprised therein*") (emphasis added). We caution counsel, however, that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a). ***See Greenwich Collieries v. Workmen's Comp. Appeal Bd.***, 664 A.2d 703 (Pa. Commw. 1995) (where issue addressed in argument portion of appellant's brief was not the same as or suggested by issue presented in statement of questions presented, court found issue waived). Because counsel has not provided any argument, whatsoever, on the issue raised in Helen's Rule 2116 Statement of Questions Involved, we will not address it on its merits.

(5) Whether the trial court's permanent injunction violates the equal protection clause of the United States and Pennsylvania Constitutions;

(6) Whether the trial court erred and abused its discretion in refusing to allow a jury trial on the eve of trial where: (1) Defendants had properly made a jury demand 20 months earlier and no objection had ever been made; (2) Defendants had a constitutional and statutory right to a jury trial; and (3) the nature of a nuisance action requires the community, not the court, to determine what standards are acceptable; and

(6) Whether the trial court erred and abused its discretion in assessing punitive damages against Defendants for using a burn barrel where: (1) the use was legal and was not at issue before the court; and (2) the barrel burning took place before the court's preliminary injunction was legally effective.

*See* Brief of Mark and Susan Fritz, at 4; Brief of Helen Fritz, at 6-16.

Helen Fritz claims that the trial court failed to rule upon several pretrial motions *in limine*, including a ruling on the proper standard for an expert witness (**Daubert**[13]/**Frye**[14] claim), the diminution of the Clarks' property value, and how the Clarks' health was affected by the operation of the furnace.[15] Helen asserts that failure to rule upon these motions prior to trial constituted "reversible error that can only be cured by a new trial."

---

[13] **Daubert v. Merrell Dow Pharmaceuticals, Inc.**, 509 U.S. 579, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993).

[14] **Frye v. United States**, 293 F. 1013 (D.C. Cir. 1923) (novel scientific evidence admissible only upon showing that methodology has gained general acceptance in relevant community).

[15] The admission of evidence is committed to the sound discretion of the trial court and our review is for an abuse of discretion. **Commonwealth v. Parker**, 104 A.3d 17, 21 (Pa. Super. 2014) (citation omitted). "An abuse of discretion occurs where the law is overridden or misapplied, or the judgment *(Footnote Continued Next Page)*

- 8 -

To support this issue, Helen Fritz cites to one criminal case where a trial court refused to hear evidence on a defendant's motion to suppress in an underage drinking case. *See Commonwealth v. Breslin*, 732 A.2d 629 (Pa. Super. 1999). In *Breslin*, the evidence the defendant sought to be suppressed consisted of breath samples and test results taken from the defendant's breath samples, which formed the sole support for the defendant's conviction. The circumstances in *Breslin* are in no way analogous to the current equity action seeking a permanent injunction against the Fritzes. Where there is no citation to relevant authority on the issue to show how the court committed reversible error, we find this issue waived. Pa.R.A.P. 2119.[16]

Next, the Fritzes assert that the court erred by permitting the Clarks to offer "speculative, unproven" testimony about the alleged adverse health effects they suffered as a result of emissions from the Fritzes' furnace.

Prior to trial, the parties agreed that the Clarks' medical records would not be introduced into evidence, primarily due to the fact that they were not seeking damages for any medical claims or injuries. Despite this agreement,

_(Footnote Continued)_ _____

exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record." *Commonwealth v. Adams*, 104 A.3d 511, 517 (Pa. 2014) (internal quotation marks and citation omitted).

[16] Additionally, Helen has failed to show how these delayed rulings constituted reversible error.

it was incumbent upon the Clarks, as plaintiffs, to prove that the Fritzes created a nuisance. Section 822 of the Restatement (Second) of Torts sets forth the elements of liability for a private nuisance as follows:

> One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either
>
> (a) intentional and unreasonable, or
>
> (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

*Diess v. Pa. DOT*, 935 A.2d 895, 905 (Pa. Commw. 2007), citing Restatement (Second) of Torts § 822. *See also Kembel v. Schlegel*, 478 A.2d 11 (Pa. Super. 1984) (acknowledging that Pennsylvania Supreme Court adopted section 822 of Restatement (Second) of Torts as test to determine private nuisance). The Restatement further defines the harm necessary to impose liability under nuisance law as "significant harm, of a kind that would be suffered by a normal person in the community or by property in normal condition and used for a normal purpose." *Id.* at 15, citing Restatement (Second) of Torts, § 821F.

Here, testimony about the physical symptoms suffered by the Clarks as a result of the smoke from the Fritzes' furnace was necessary to prove the "significant harm" element of a claim for nuisance. *See Evans v. Moffat*, 160 A.2d 465 (Pa. Super. 1960) (testimony that plaintiffs experienced headaches, coughing, nausea and irritation of nasal passages as result of noxious and foul smelling gases emanating from defendant's coal

company relevant to prove case under section 822 of the Restatement (Second) of Torts). Under these circumstances, the court did not err in admitting such evidence.

The Fritzes next claim that the court improperly admitted the expert report and testimony of the Clarks' expert, Alan R. Leston, into evidence at trial.[17] Specifically, they assert that the court should not have permitted a lay witness to opine on the engineering characteristics of the furnace, its causal connection to damaging the environment, and reference to metrological data in his report as proof of causation. Without this testimony, the Fritzes claim that the Clarks failed to prove that the furnace caused any harm which would warrant a permanent injunction.

_____

[17] It is well established that:

> [w]hen we review a ruling on the admission or exclusion of evidence, including the testimony of an expert witness, our standard is well-established and very narrow. These matters are within the sound discretion of the trial court, and we may reverse only upon a showing of abuse of discretion or error of law. "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Grady v. Frito-Lay, Inc.*, [] 839 A.2d 1038, 1046 (Pa. 2003). In addition, "[t]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *McClain v. Welker*, [] 761 A.2d 155, 156 (Pa. Super. 2000) (citation omitted).

*Freed v. Geisinger Med. Ctr.*, 910 A.2d 68, 72 (Pa. Super.), *aff'd*, 971 A.2d 1202 (Pa. 2009).

First, we note that, contrary to the Fritzes' assertion, the court certified Leston as an expert witness in the area of air quality science and outdoor wood boilers. N.T. Non-Jury Trial, 4/8/15, at 315, 317. Leston testified that part of his job as a senior engineer was to analyze data and prepare daily air quality pollution reports. *Id.* at 301. He also determined prevailing winds and used airport data to obtain wind speed direction when he worked for the Connecticut Department of Environmental Protection. *Id.* at 323-24. Based on Leston's experience in air quality analysis and data, as well as his extensive employment history in the industry, the trial court properly qualified him as an expert witness. *See* Pa.R.E. 702 (witness qualified as expert by knowledge, skill, experience, training or education may testify in form of opinion or otherwise if expert's knowledge is beyond that possessed by average layperson, where knowledge will help trier of fact understand evidence or determine fact in issue and where expert's methodology generally accepted in relevant field); *see also Abbott v. Steel City Piping Co.*, 263 A.2d 881 (Pa. 1970) (practical experience may, in proper case, suffice to qualify witness as expert).

In order to obtain technical information on the Fritzes' furnace, Leston relied on videos and photos taken by Mr. Clark, as well as the manufacturer's owner's manual, sales brochures, and the manufacturer's website. N.T. Non-Jury Trial, 4/8/15, at 320. Leston also testified that he looked at topographical maps of the area and gathered data from several airports and the National Weather Service to ascertain the area's prevailing

wind direction. *Id.* at 321. Because Leston's conclusions were based upon generally accepted principles and methodologies, the court did not abuse its discretion in permitting him to testify regarding the relevant issues surrounding the winds and how they affected the smoke flowing from the furnace. *Freed*, *supra*; Pa.R.E. 702.

The Fritzes next claim that the court improperly conducted its own independent research and took judicial notice of extraneous evidence which it used to support the grant of a permanent injunction. Specifically, they claim that the court relied on evidence of the prevailing winds in the Los Angeles City Valley basin and its smog effects upon the City of Los Angeles and then compared it to the wind currents and topography in Tilden Township. Additionally, the Fritzes assert that the court improperly took judicial notice of the Eastern United States' air currents and how they apply to the instant case.

Instantly, the court's reference to and use of facts relating to wind currents was not improper where those facts could be determined from accurate sources and where the information was supported by both lay and expert testimony from trial. *See* Pa.R.E. 201(b). *See also Interest of D.S.*, 622 A.2d 954, 957 n.4 (Pa. Super. 1993) ("Adjudicative facts are facts about the particular parties to the controversy, their activities, their property, and their interests. Facts which help answer who did what, when, where, why, how, and with what motive and intent are all adjudicative.").

Here, the facts in question were adjudicatory facts; therefore, we find no merit to this claim.

Next, Helen Fritz claims that the court's issuance of a permanent injunction is unconstitutional under the Equal Protections Clauses of the Pennsylvania[18] and United States Constitutions[19] because the Fritzes are not being treated the same as other similarly-situated citizens of Tilden Township, the Commonwealth of Pennsylvania, and the United States. Additionally, the Fritzes claim that because their furnace complied with local township ordinances and because the unit was approved for use by the EPA, the court has "improperly criminalized the legal behavior of [their] use of the Furnace." We disagree.

In order to grant a permanent injunction, the evidence only needed to show that a legal wrong existed for which there was no adequate remedy at law. *J.C. Erlich*, *supra*. There was no question that the Fritzes' continued, intentional use of the furnace greatly impacted the Clarks' daily life, as it prevented them from enjoying the outdoors and also caused them to suffer physically from the smoke that permeated their home despite constant self-help efforts to abate the problem. Accordingly, they successfully proved that a private nuisance claim. *See* Restatement (Second) of Torts § 822 ("One is

_____

[18] *See* Pa. Const. art. III, § 32.

[19] *See* U.S. Const. amend. XIV, §1.

subject to liability for a private nuisance if . . . his conduct is a legal cause of an invasion of another interest in the private use and enjoyment of land, and the invasion is . . . intentional and unreasonable[.”]). Because no other adequate remedy existed short of shutting down the unit to rectify the situation, a permanent injunction was justified. *Id.*[20]

Moreover, it is of no moment that the Fritzes complied with local ordinances in installing and operating the furnace or that the unit was approved by the EPA, it is well-settled that a private nuisance often flows from the consequences of an otherwise lawful act. *Liberty Place*, *supra* at 509 (collecting cases where defendants enjoined from legal acts that created private nuisances).

The Fritzes next claim that the trial court abused its discretion in refusing to conduct a jury trial when they made a jury demand months before the scheduled trial date and had a statutory and constitutional right to a jury trial. It has been long recognized that Article 1, Section 6 of the

---

[20] We also note that this situation does not invoke equal protection concerns. The essence of the constitutional principle of equal protection is that like persons in like circumstances will be treated similarly. However, it does not require that *all* persons under *all* circumstances enjoy identical protection under the law. Because the Fritzes chose to continue to operate their furnace, which produced unwanted emissions that negatively affected the use and enjoyment of the Clarks' property, they were not similarly situated like other local, state and national citizens who were utilizing their furnaces in a way that did not substantially interfere with another's use and enjoyment of property.

Pennsylvania Constitution does not permit a jury trial in an ordinary equity action.[21] ***Rosenberg v. Rosenberg***, 419 A.2d 167, 206 (Pa. Super. 1980), citing ***Schwab v. Miller***, 153 A. 731 (Pa. 1931). Once the Clarks brought the original action in equity, the matter has entered the realm of equity and equity jurisdiction subsumed the entire case. ***See McGovern v. Spear***, 344 A.2d 826 (Pa. 1975). Therefore, this claim has no merit.

Finally, the Fritzes complain that the court improperly awarded punitive damages to the Clarks where there was "no basis in the facts or the law to support same." Appellants' Brief, at 5. Punitive damages may be awarded in equity cases and "the finder of fact should be given broad discretion in assessing the amount of punitive damages which will be sufficient to punish the defendant and to set an example which may deter the defendant and others from similar conduct." ***Pierce v. Penman***, 515 A.2d 948, 954 (Pa. Super. 1986).[22]

---

[21] The equity jurisdiction of Pennsylvania courts is triggered only when an adequate remedy is not available at law. ***See Peitzman v. Seidman***, 427 A.2d 196, 198 (Pa. Super. 1981).

[22] Although we recognize that where an injury is sustained to real property as a result of the negligence of another, the property owner is entitled to damages for the inconvenience and discomfort caused thereby, ***Evans v. Moffat***, ***supra*** at 473, here the Clarks did not request money damages or include a separate claim for inconvenience and discomfort in their complaint. At most, they requested that the Fritzes pay their attorneys' fees and costs for prosecuting the action. ***See*** Plaintiffs' Complaint, 2/13/13, at ¶¶40(b), 41(b).

Just days after the court issued a preliminary injunction[23] preventing the Fritzes from operating their furnace, Mr. Fritz built a 55-gallon burn barrel, ignited a fire in the barrel, and placed it on the edge of the Clarks' property. Mr. Fritz tended to the fire, which was continuously stoked for 13 hours, as he sat in a lounge chair under a sun umbrella while drinking beer. Mr. Fritz later admitted that he was "peeved" and had "had a couple beers" at the time. N.T. Non-Jury Trial, 4/8/15, at 265. The court determined that Mr. Fritz's actions were "deliberate and meant to harass the plaintiffs." Trial Court Opinion, 8/28/15, at 28. Under such circumstances, punitive damages were warranted to punish the Fritzes and prevent them from engaging in similar conduct in the future. *Pierce*, *supra*; *SHV Coal, Inc. v. Continental Grain Co.*, 587 A.2d 702 (Pa 1991) (whether party's actions rise to level of outrageous conduct is within discretion of fact finder).

_____

[23] While the Fritzes claim that barrel burning took place before the court's preliminary injunction was legally effective, the Clarks' log indicates that this specific barrel was constructed and placed on the edge of their property just days following the court's entry of the preliminary injunction. Moreover, while they may have used a burn barrel prior to this date, the court's determination that the this barrel was intentionally used to emit fumes and smoke over the Clarks' property as a result of the instant action is supported in the record.

Judgment affirmed.

DUBOW, J., Joins the majority.

STABILE, J., Concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/6/2016